Good morning, Robert Rainwater on behalf of Mr. Salcido. In order to consider the primary issue here, I think we have to look at the technology of creating visual depictions and its influence or effect on the burden under 901 or the necessary burden to establish a conviction. Let's assume a world where we had no photographs and we had no computers. For visual depictions, we would have perhaps paintings and drawings. Clearly, those could be visual depictions under the statute. The statute doesn't require that they be of any particular quality. The problem would be that the statute requires that those paintings and drawings were produced by showing depictions of minors engaged in explicit sexual conduct. And clearly, from a painting or drawing, I don't think the average person could say whether or not they were produced by seeing an actual event. Obviously, we all have a common knowledge that artists might draw something completely out of their imagination. And it could even be a real person. An artist could draw a real person, but that wouldn't necessarily tell us that it was a real event that took place, that it was produced using minors engaged in sexually explicit conduct. For example, an artist could draw a picture of a minor that he knows and make it up in his head about what the conduct was and what he drew there. So with paintings and drawings, there would be a requirement under the statute, under 901 and sufficiency for the jury, that the government would have to show that they were actually produced showing the use that minors involved in sexual explicit conduct. For example, they could call the artist who said, yes, I drew that. I was watching this. They could call a participant in it to say that act occurred. Let's next assume photographs. We have photographs. Photographs are somewhat unique in terms of authentication because photographs in their simplest form are just the capture of light reflecting off a real event, at first off of tin and then off of film. So photographs, by their nature, are authenticating in that they can only depict an actual event. Light being bounced off, something is happening. What do you think the law requires, that the expert witness testify about it or just that the jury can look at it and say, well, that's it? I think with a photograph, the law is pretty clear that a jury can look at it. We know that the judge in determining 901 can look at it and say, based on its quality, it's not a painting or drawing. Therefore, it's an actual event because it's light reflected off of something. The only issue for the jury then is whether or not they're minors or the judge in admitting it, whether or not they're minors. And that's something that a layman can look at and make a determination whether or not they'd appear to be minors. The problem is when we add computers to the mix, because computers can take images, visual depictions and make them look at the same quality as pictures. And then we're really back, though, to the same burden of proof that we have for for paintings and drawings, because no one can tell you whether a computer image was actually made at the time that the production was produced, using minors engaged in sexually explicit acts. For example, originally, computer graphics were pretty simple. The original Pong game, it was easy to tell it was a computer. Nowadays, with games, it's hard to tell whether you're watching a high-definition version of Madden or you're watching a real football game. So under your theory that a person can never be convicted if it's a computer image. No, not at all. I think they can be convicted in the same ways that they can be convicted of a regular visual image, a painting or a drawing. They can also be convicted in this Court as considered in Gallardo. In Gallardo, they established there were pictures by showing that the pictures were around in the 50s before we had computer technology. Once they established their pictures, they're admissible. In Rearden, they called an expert to say these kind of images cannot be produced at this time by computer depictions. Therefore, the pictures are admissible now. Are you arguing, counsel, let's see if I get you right, that the government does not carry its burden of proof simply by showing what was in the computer and allowing the jury to determine whether they were actual depictions of events, that there is an added requirement that an expert witness be called, qualified, and testify that in his opinion or her opinion, the depiction was of actual events? Is that what your point is? My point is, by looking at. Yes or no. Can you answer that? Well, I don't think I can answer yes or no. Oh, OK. Can I explain why? My point is that given the state of technology today, it's impossible to say whether an image was generated in a computer. You say that. You, Mr. Rainwater, say that. Yeah. Yes. But but you're not an expert witness and you're not a juror and you're not a judge. Now, what case do you base yourself on that says that not it's not enough simply to show the images to a jury, that we have to have some other qualifying, which you determined to be authenticating, which I might disagree with you as to the term, but that's OK. What case do you say in the Ninth Circuit says that it's not enough to show the images to the jury, that you must have some foundational qualifying testimony by somebody who qualifies as an expert saying these are not drawings. These are not made up images. These are real images. I don't think the Ninth Circuit has ever addressed that issue. I don't think so either. I think the issue has only come up in terms of the two Ninth Circuit cases where they say, well, these are obviously photographs. We don't have to worry about it. So I think it's really a question of first impression. You know, like Judge Bay, I have some probably structural disagreement with you on 901, because it seems to me the authenticity is, are these images, you know, from this computer and are they computer images? OK, that's the authentication. Now, what do they prove seems to me to be another question. Let's say we have a computer image and it's, just to pick a subject, Mr. Rainwater, or it looks like Mr. Rainwater. And then the detective comes in and says, you know what, I know Mr. Rainwater and I've seen him in person and he's a real person. And we now have this computer image and that's Mr. And I can tell you that that's Mr. Rainwater. Do you need more than that? Yes, because for example, you could go watch Spider-Man, they could put my picture in there and people could say that's Mr. Rainwater. But everybody would know that wasn't really Mr. Rainwater in the Spider-Man movie or the X-Men movie or all these movies they make. And in the Fabrizio case. But this this person, as he supposedly did here, says this is Mr. Rainwater. Now, I thought your argument was going to be, but it's but it's a virtual depiction of Mr. Rainwater. They've never actually taken the photograph of Mr. Rainwater. That's what I thought your argument was going to be. So maybe I'm missing something. Well, I think that is my argument. For example, in the Fabrizio case, they cite to an image of the actress Jennifer Gardner. If you go look at that, you can't tell whether that's a picture of Jennifer Gardner or a visual depiction using programs, which we go to that website. It's apparently some amateur used a program who made a picture of her that looks just like her. Lots of people could probably come in and testify that's Jennifer Gardner. She's a real person. I know her. But there's no one who can say with a sufficient degree of certainty that that wasn't created using a computer and it doesn't depict an actual – it wasn't made producing – with production of minors engaged in sexual and specific conduct, which is a – the statute requires there be an act. For example, if there's no act underlying the image, it's not prohibited. And the First Amendment says that's free speech under Ashcroft v. Hughes. Kennedy, did the defendant present testimony that said that – an expert witness saying that these photographs from the – these images from the computer could not be identified as being simulated or actual? The defendant went to trial based on the government having to prove under 901 that they were – The answer to that is no. Yes. The answer to that is no. Number two, how do you handle the Salcido admitted intentionally viewing child pornography over the Internet, Report as Transcript 259, Government's Trial Exhibit 1? Because I don't think it matters one whit what his intention is in this case. If the images are not visual depictions as required under the statute – Even if he thought so. Even if he thought so, yes. And that's why the jury's instructed – So even if he says, man, I love child pornography, and then he goes on the Internet and it's all virtual child pornography, there's nothing illegal about that, correct? Correct. In fact, the government – there's no instruction that says he has to know that they're children. Now, how do you get around Officer Smith testifying that he knew two of the young ladies who were in a child pornography film? Okay. Well, my example is the Jennifer Garner. You can bring in people to say it's a real person, okay? But how do you introduce evidence to show it produced showing the actual act? Even if it is a real person, if it's a made-up act, it doesn't meet the statute. I'm out of time, right? Was there any evidence introduced by the defendant that this was a made-up act and this was virtual, not real? Well, we introduced quite a few images that were false that the jury obviously seriously considered and by – based on their notes, indicated that they had doubts about whether or not these images are real or not because we showed them approximately 15 images off – that I took off the Internet that they had some real doubts determining whether they're fake or real. And it's an easy demonstration to a jury to show you can just go on the Internet and get images that – Was there any evidence introduced that as to the two women or two young girls who were identified by Officer Smith that any of these images were made up? That's incorrect because there weren't two girls identified by Officer Smith. The actual testimony is, in the video, there is a young girl shown dancing at the beginning of the video. He testified he didn't know anything about her. Then the second part of the video, it's obviously been spliced together, shows basically a woman's face and a penis. And that's all you can see. He testified that that person, that girl in that video, was a real person. That's all he testified to, if you believe that. I don't believe he did, but if you believe the government's position. Kennedy, you didn't attach the transcript of James Smith's testimony to the court records? I don't think we put – I think I put some of it in the excerpt of records. The government – that was my question. I can't – this is a really an issue that we seem to be plagued with this week. And that is people are making all these arguments. We don't have anything in the records. So maybe the government will help us. But I didn't find Detective Smith, so that I could even ask you what he said, because I didn't find it in here in the – in the search. There's a reporter's transcript citation, but no transcript. But there's no transcript. Well, I – And I recognize it's the government. I thought I put the judge's ruling in the excerpt. I don't have it right now, but – Well, it's not the judge's ruling, because whether we look at this as a 901 case or a sufficiency of the evidence case, it seems to me we have to look at the actual evidence, not either counsel's argument or the judge's version. So just a word to the wise for all of you, if you're going to argue from evidence, we actually need to have it in the record. And we'll hear from the government. Maybe they can point us to it. But if not, we'll ask that the transcript be – well, that the transcript be – that the record be supplemented. Is it your position, Mr. Rainwater, that the judge made a finding that Smith testified that two of the girls portrayed in one of the movies depicting the sexual exploitation of the minors were known to him? No. No. It was my position that the objection was sustained to his testimony, and the government never introduced the evidence. Well, let's hear from the government. We'll see if we can sort this out. Thank you. I realize I'm out of time. Could I just address one? We're going to have some time for rebuttal. Okay. Thank you. Could we start where we ended with Mr. Rainwater, and that is, as we read the briefs, the government argues that, as I read it, Detective Smith's testimony plus the confession plus the jury's ability as a fact finder all added up meet the Rule 29 standard. Where is Detective Smith's testimony? Specifically, Your Honor, and I apologize for not including this in the supplemental excerpts of record, specifically, he testifies at pages 237 – actually, he begins at page 234. But if I could read relevant portions. You can read it, but do you understand our problem? Yes. We spend a lot of time preparing for these cases. Yes. The government bears the burden of proof. Then you both argue from something we have no idea what you're talking about, and now we come here and you're going to read it. So I'm going to ask you to supplement the excerpt of record so that we actually have the transcript. But just to aid our discussion today, I think it would be helpful for you to quote. All right. Detective Smith testified, we conducted interviews both with the suspects and the victims that were present in the video, and that's referring to the video 6.1, which was introduced into evidence. And then he says, I have to clarify, there were actually three participants in that video. The first girl that's shown in the video was not part of our investigation. That's the girl that Mr. Rainwater referred to, who was dancing in a two-piece bathing suit at the beginning of the video. The second two participants, Detective Smith testifies, involved in the sexual acts were part of the investigation, that being the adult male penis that is visible in that video and the minor child who is sucking on the male penis. I want to clarify, too, in that video, while a lot of the video does focus on that girl's face, you do see her bare chest, and she's clearly prepubescent. I just wanted to address that issue because that was raised in the defense brief. Okay, well, that goes to the age issue, which I don't have so much trouble with. Here's the trouble I have, is whether the depiction is actually computer-generated. In other words, you could take anybody's face in this courtroom and it would be a real person, but you could make them do things that they didn't actually do by computer manipulation. So, my question is whether the government has met its burden on the sexual act issue by a real person. Well, I think that's where the testimony of Detective Smith was, frankly, even more helpful than a computer expert regarding whether or not it's virtual or not. He actually conducted the investigation out of state, could also testify it was produced in Connecticut, testified that he spoke with the victim in that video that is the focus really of that video for four hours about her, about the investigation and her victimization in that. And he testified specifically that the video, they learned, was produced in Connecticut. Okay, well, now I'm having a different problem. So basically, he has an investigation and he talks to the victim, and does he testify that the victim tells him that she had to engage in these acts? We were, the government was not allowed to get into specifics of the investigation based on a defense objection, however, the defendant, excuse me, the detective did testify also that Exhibit 7 were photos of the scene, the bedroom where the video was taken, and the home. And he was saying that those photos accurately reflect the crime scene, if you will, that the detective investigated. We also have those, and they, you know, are a match with the video, the background in the video. I mean, this is sort of an odd case because it's one removed from, let's say, the charge of child molestation. Then we would have, you know, the whole issue of child testimony or not being able to testify, and whether the detective would be able to come in and kind of explain that there had been child molestation. Well, here, what we actually have is, in effect, a child adult sex act, but now reflected by a computer image, correct, like a photograph. It just happens to be on a computer. It's a movie that was put on a computer. It's a movie. So it's basically a photograph or a movie. It now happens to be on a computer. But the question is whether there's enough evidence to say that it actually took place, correct? Well, I think the fact that the detective on the investigation testified to the investigation, this is a victim in the investigation, a victim, clearly by looking at the movie, that was basically produced in the home that the detective was in. I think that's very... Was he allowed to testify over objection, I imagine on hearsay, grounds of lack of confrontation, that the victim had told him that she was involved in an act in that scenario? He wasn't allowed to testify to that. He was allowed to testify that he spoke to her for approximately four hours about the murder, specifically. He also testified that he talked to the first girl in the video, but never identified her, that she wasn't part of that same... I'm really sticking to the one where, you know, he has this person who he doesn't, you know, he sees her in person. Right. And he says she's the one on this video. And just to be clear, the defense never introduced any images into evidence. He was allowed to argue at closing about images that were never admitted into evidence, never testified to by anyone, including by an expert. But he was allowed to argue that he thought they weren't real. He was allowed to do that over government objection. So it was... Did the jury find that some of these images were not real? No. What happened, and I think the only confusion based on the jury questions that they had, was whether or not, based on the interstate commerce requirement that it crossed state lines, whether it had to be each image or at least one. And that is what the clarification was for. And the defense actually provided the clarifying instruction which the judge read, that the verdict must be based on one or more visual depictions that they unanimously agree the government has proved each element for at least one visual depiction. It's a little hard to tell without seeing the transcript, of course, but if we simply had a detective who said, I've seen this girl and I know this girl is real and I'm looking at the video, but didn't have any information about there being a sex act or a victim, would you agree that would be a much harder case? That would be a much harder case. And I think in this case we have that because he talks about the victim clearly being sexually exploited in an investigation in Connecticut where the movie was produced. But I will certainly supplement the record with his entire testimony. Now, the other question I have really relates to the confession. The district court says that, you know, these were actual children. You can draw that inference from his confession. But if what he's saying is that I acknowledge what I did was illegal and immoral and I would like help, how does that do anything in terms of proof as to whether the child is real or virtual? Well, and that's precisely, Your Honor, why we also introduced evidence of chat logs, which are also defendant statements. And as part of the proof of his knowledge that these images are on his computer and his interest in real kids, specifically 12-year-olds. Right, but I could have an interest in real kids, but if I look at virtual kids, have I committed a crime? No, but I think the evidence in this case is that not only from Detective Smith's testimony, but also... I'm just asking you in terms of his confession, what... But we had a lot more than that confession. I understand you did, but I'm asking about the confession now, because there's a lot of reliance by the district court and in your briefs on this confession. I'm just trying to put it in context. Well, it's also, Your Honor, he made statements confessing to Detective, excuse me, Special Agent Prado, the case agent, about Djergonofti, these pictures, how he really, you know, enjoyed looking at... Where did I find that confession in the transcript, in the excerpt of the record? Your Honor, if it's not in there, I could supplement that as well. With the Court's indulgence. At this miniature confession, which, like, is about three lines long or two. I mean, I can pull it up here, but now I'm finding out there's a different confession. Where did that come from? Well, there were a number of statements that he made as well to Special Agent Prado, in addition to the written confession. Are they in the excerpts of record? And if so, give us a citation. I can double-check. All right. One question I'd like to ask you, see if I can get a straight answer in my own mind. You probably have given it already. Did Sergeant Smith show the images which were on the computer of Salcido to either of the young girls and ask them whether they had done the acts which were shown on the computer? I don't know the answer to that. There's not evidence in the record of that. No evidence on that. That wouldn't have been admissible. I don't think so. I don't think so. So we're kind of in this situation where, obviously, with the Supreme Court's ruling on the right of confrontation, that you have kind of a blocked door on some of this evidence. But if the evidence doesn't actually, isn't actually enough in and of itself to show that it's a real kid, then doesn't that mean that the government would really need to bring in an expert to kind of meet its burden of proof to show this is a real image, it's not a computer-generated? Well, with all due respect, I think bringing in a witness who actually met a victim is pretty good evidence that it's a real kid. But certainly an additional way to do it would be to bring in a computer expert on that issue. Do you think you meet the burden of proof of showing that it's a real kid by showing the images? Yes. The jury determines a real kid. Yes. And there were additional. And if the defendant has any evidence that these images can be cleverly made up by computer simulation, let them produce it. And that's what he argued in closing. Putting in images, well, not putting them in evidence, but. We don't know what the detective said, so we don't even know the scope of his testimony at this point. Why don't you determine, we're going to give you a minute of rebuttal, and why don't you determine if the second confession or the testimony about the confession is in the excerpt so we can take a look at that. Okay.  Thank you. Your Honor, I believe, just for clarification, that the government's argument about the confession confuses the confession with the chat box. If you look at page 119 of the supplemental excerpt of records, it talks about finding pics to do certain acts that the government mentions, too. So I don't think that was in any confession. It's in the chat box that they introduced to establish this intent where, in this case, there was no issue of intent. Finally, I'd just like to address the fact that the statute by its own nature. I don't have a page 119. 119 of the government's supplemental excerpt of records. Yeah. Excuse me. It says 19 in 119, so maybe it's 19. It's double-stamped. I see it's out of order. I see it now. So we just run by that again. You're saying? The last message there, if you, above individual, it says finding pics to jerk off to. Yes. So I think the government's reference was to the chat box. I don't think there's anything about that in the statements in this confession. But that doesn't tell you whether it's a real person or not, correct? No. No, and I don't think it has anything to do with that is what I'm trying to point out. It wasn't in the confession. It's in the chat box. I see what you're saying. Thank you. And finally, just to address the other issue that Judge Bea brought up at the end, I don't believe it's enough to show it's just a real child, because the statute not only requires a visual depiction, but it requires a visual depiction that's produced showing a person engaged in that kind of activity. So it not only requires a real child, it requires that it be produced when that child is actually involved in sexually explicit conduct. If it's a real child and a made-up incident, it doesn't count. I'd submit it on that. Thank you. Thank you. And are you able to point us to the point in the record that you made reference to? Your Honor, it's in the transcript. I'd refer where in the transcript and supplement the record. All right. You have two days to supplement the record. All right. With everything that was cited in your brief to the transcript. And the same is true for counsel for the appellant. You also, if there's anything in your brief in which you cite to the transcript that's not in the excerpts of record, we ask that you supplement that as well. Thank you. Thank you. The case of United States v. Salcedo was submitted. The next case.
judges: Siler McKeown, Bea